**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KANWAR BIR SINGH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES C. MCCONVILLE, *et al.*, <br><br> Defendants. | Civil Action No. 16-581 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiffs Kanwar Bir Singh, Harpal Singh, and minor A.S.G., who are all observant Sikhs, bring this lawsuit against the United States Department of Defense ("DOD"), the United States Department of the Army ("Army"), and three military officials—James C. McConville, Deputy Chief of Staff, G-1, of the Army; Ashton B. Carter, Secretary of Defense; and Patrick J. Murphy, Acting Secretary of the Army—alleging various violations of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb, *et seq.*, and the First and Fifth Amendments of the United States Constitution pertaining to the Army's allegedly unlawful grooming and personal appearance regulations and discriminatory treatment with respect to each of their requests for religious accommodations. *See generally* Compl., ECF No. 1.  Contemporaneously with the Complaint, the plaintiffs filed a Notice of Related Case, ECF No. 2, indicating that this case "involves common issues of fact" with *Singh v. Carter*, No. 16-cv-399 (BAH), an earlier-filed case assigned to the undersigned Chief Judge.  As a result, this case was also assigned to the undersigned Chief Judge, pursuant to Local Civil Rule 40.5(c)(1).  *See* LCvR 40.5(c)(1) ("Where the existence of a related case in this Court is noted at the time the indictment is returned or the complaint is filed, the Clerk shall assign the new case to the judge to whom the oldest related

1

case is assigned."). Pending before the Court are (1) the defendants' objection to the related-case designation, pursuant to Local Civil Rule 40.5(c)(3) ("Defs.' Obj."), ECF No. 37; (2) the plaintiffs' Motion to Consolidate this case with *Singh v. Carter* ("Pls.' Mot. Consolidate"), ECF No. 27; and (3) the plaintiffs' Application for Preliminary Injunction ("Pls.' Mot. Prelim. Inj."), ECF No. 9. The defendants' objection to the related-case designation is addressed first before turning to the plaintiffs' motions.[1]

## I.   RELATED-CASE DESIGNATION

Generally, all new cases filed in this courthouse are randomly assigned, *see* LCvR 40.3(a), in order "to ensure greater public confidence in the integrity of the judicial process," "guarantee[] fair and equal distribution of cases to all judges, avoid[] public perception or appearance of favoritism in assignments, and reduce[] opportunities for judge-shopping," *Tripp v. Exec. Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (Calendar Committee three judge panel). The local rules contain an exception, however, in the interest of judicial economy, for "related cases." *Id.*; *see* LCvR 40.5; *Doe v. Von Eschenbach*, No. 06-cv-2131, 2007 WL 1655881, at *1 (D.D.C. June 7, 2007) ("In some cases, . . . the interests of judicial economy served by the related case rule . . . outweigh the fundamental interests served by the random assignment rule."). "Civil . . . cases are deemed related when the earliest is still pending on the merits in the District Court and they" (1) "relate to common property," (2) "involve common issues of fact," (3) "grow out of the same event or transaction," or (4) "involve the validity or infringement of the same patent." LCvR 40.5(a)(3).

---

[1] The plaintiffs have requested oral argument on the pending motions, Pls.' Mot. Prelim. Inj. at 1; Pls.' Mot. Consolidate at 5, but the Court finds, for the reasons stated in this Memorandum and Order, that the facts of this case do not warrant expedition, *see* LCvR 65.1(d), and that the parties' written submissions are sufficient to resolve the pending motions. Therefore, this request is denied. *See* LCvR 7(f) (allowance of oral hearing is "within the discretion of the court"). The plaintiff's Expedited Motion for Status Conference, ECF No. 43, is similarly denied.

When a party objects to a related case designation, "the matter shall be determined by the judge to whom the case is assigned." LCvR 40.5(c)(3). If that judge "determines that the cases in question are not related, the judge may transfer the new case to the Calendar and Case Management Committee," and the Committee either "shall cause the case to be reassigned at random," or "may return the case to the transferring judge," depending on its findings regarding whether good cause exists for the transfer. LCvR 40.5(c)(1).[2] The party requesting the related-case designation bears the burden of showing that the cases are related under Local Civil Rule 40.5. *United States v. Volvo Constr. Equip. AB*, 922 F. Supp. 2d 67, 68 (D.D.C. 2013); *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010). Notably, a related-case inquiry is separate and distinct from an inquiry regarding case consolidation, which mechanism provides courts with broad discretionary authority to consolidate actions involving "a common question of law or fact." *See* FED. R. CIV. P. 42(a); *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 19–21 (D.D.C. 2002).

Here, it is undisputed that the earlier-filed case, *Singh v. Carter*, No. 16-cv-399, is still pending on the merits and the plaintiffs rely on the second factor in Local Civil Rule 40.5(a)(3), requiring that cases "involve common issues of fact," LCvR 40.5(a)(3)(ii), as the basis for the cases' relatedness. The defendants concede that "both cases involve followers of the Sikh faith who requested religious accommodations to deviate from the Army's uniform and grooming standards" and that "[t]he complaints are based on alleged violations of the [RFRA]," as well as the same "Constitutional provisions." Defs.' Obj. at 2. Nonetheless, the defendants object to the "common issues of fact" basis for relatedness, arguing that "the similarities between the cases . .

---

[2] The Rule was amended to "make the individual judge's decision final" regarding a finding that cases are related and, thus, not subject to review. Cmt. LCvR 40.5(c)(3).

. are not sufficient to overcome the default rule favoring random assignment of cases." *Id*. The defendants point to the "individualized" and "case-by-case" analysis required under RFRA and Army regulations governing religious accommodations and emphasize the factual differences between the plaintiffs. *Id*. at 2–3; *see also Singh v. Carter*, Case No. 16-cv-399, Mem. Op. (May 6, 2016) at 19–20, ECF No. 47 (discussing factual differences between plaintiffs).

The defendants' ignore, however, the common issues of fact in the two cases related to the defendants' policies and actions. In *Autumn Journey*, the court overruled the defendant's objection to the plaintiff's related case designation for six separate actions in which a hospice care provider "challenge[d] the validity of [a] regulation" on the same grounds, namely, "whether the regulation impermissibly conflict[ed] with the underlying statute and, if so, what relief should be afforded to the plaintiff hospices." 753 F. Supp. 2d at 140–41. Since "[e]ach case thus present[ed] identical issues for resolution," the court reasoned that "there [was] substantial overlap in both the factual underpinning and the legal matters in dispute in each of these hospice cap cases . . . . such that judicial economy would be served by having these matters resolved by the same judge." *Id*. at 140; *cf. Boyd v. Farrin*, No. 12-cv-1893, 2012 WL 6106415, at *1–2 (D.D.C. Dec. 10, 2012) (finding cases not properly deemed related where plaintiffs brought entirely different claims for relief).

Similarly, in *Assiniboine & Sioux Tribe of the Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157 (D.D.C. 2002), the court rejected the defendants' objection to the related case designation in a case in which, like an earlier-filed case brought by individual Indians, the plaintiff Indian tribe "allege[d] that the federal government's trustee-delegates . . . breached . . . their fiduciary duties" required by the 1994 Indian Trust Fund Management Reform Act. *Id*. at 158, 160. The court noted that, in both cases, the Indian plaintiffs' "'ultimate goal'" was to get

4

"an accounting of their funds held in trust by the United States" and explained that, in both cases, the court would "have to determine . . . whether the defendants [were] administering the[] leases in accordance with their fiduciary obligations" and whether the defendants were properly managing funds. *Id.* at 158–59 (citation omitted).

As in *Autumn Journey*, the plaintiffs in both cases at issue here challenge the same Department of Defense and Army regulations governing requests for religious accommodations on the same grounds.  For example, they challenge the regulatory process for obtaining religious accommodation, *see* Compl. ¶¶ 237–241, Case No. 16-cv-581 ("The process for obtaining an accommodation . . . is onerous."); Compl. ¶¶ 122–27, Case No. 16-cv-399, ECF No. 1 (same), the neutrality and general applicability of the Army's grooming and personal appearance regulations, *see* Compl. ¶¶ 275, 278, Case No. 16-cv-581; Compl. ¶¶ 161, 163, Case No. 16-cv-399, and allege that the regulations constitute content and viewpoint discrimination, *see* Compl. ¶¶ 301–02, Case No. 16-cv-581; Compl. ¶¶ 188–89, Case No. 16-cv-399.  The plaintiffs in both cases also challenge the validity of defendants' "interest in excluding Sikhs from the U.S. military," Compl. ¶ 263, Case No. 16-cv-581; Compl. ¶ 148, Case No. 16-cv-399; and allege that the defendants have intentionally discriminated against them based on their requests for religious accommodations, *see* Compl. ¶¶ 22–36, No. 16-cv-581; Compl. ¶¶ 98–115, No. 16-cv-399.  Thus, the Court will be required to make similar factual determinations in both cases related to the defendants' process for issuing religious accommodations, the defendants' justifications for their regulations and policies, and the defendants' discriminatory conduct and/or intent, if any. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *see also* Pls.' Reply

5

Defs.' Objection Pls.' Notice Related Case at 2, ECF No. 41 ("Each Plaintiff has experienced discrimination from the Army as a result of the Army's policies and practices, and each Plaintiff's accommodation is under the review of the same decision makers within the Army, who are evaluating the same stated military interests."); *id.* at 3 ("Both cases challenge the Army's processing of Plaintiffs' accommodations [and] . . . . the scope of the temporary accommodations that were granted . . . .").

Additionally, as in *Assiniboine*, the plaintiffs in both cases seek the same relief, including "a permanent injunction (1) enjoining Defendants from enforcing the Army's grooming and personal appearance regulations against Plaintiffs insofar as they require Plaintiffs to cut their hair, shave their beards, or cease wearing their turbans; (2) ordering Defendants to permit Plaintiffs to continue serving in the Army without regard to their unshorn hair, beards and turbans; and (3) ordering that the injunction will apply to all Army posts that Plaintiffs will hold in the future, unless the Army makes an individualized showing of a compelling governmental interest that cannot be satisfied by less restrictive means." Compl. at 53 ¶ b, Case No. 16-cv-581; *see* Compl. at 34 ¶ d, Case No. 16-cv-399 (same). The fact that the Court will conduct an individual analysis with respect to each plaintiff to determine whether each plaintiff is entitled to the relief he seeks does not obviate the need for factual determinations related to the defendants' regulations and policies, and their administration of those regulations and policies, which are common to both cases.

Accordingly, the Court finds that "[i]t would waste judicial resources . . . to have another court address the[] same factual issues," *Assiniboine*, 211 F. Supp. 2d at 159, and the cases were properly designated as related. The instant case will not be referred to the Calendar Committee for reassignment.

## II.    MOTION FOR CONSOLIDATION

The same motion for case consolidation that the plaintiffs have filed in this case was filed by the plaintiff in *Singh v. Carter*. The Court denied the motion, after discussing it in detail, in a recent Memorandum Opinion issued in that case. *See* Mem. Op. (May 6, 2016) at 18–20, Case No. 16-cv-399. For the same reasons outlined in that Memorandum Opinion, the plaintiffs' motion to consolidate this case with *Singh v. Carter* is denied.

## III.   MOTION FOR PRELIMINARY INJUNCTION

Each of the three plaintiffs is an observant Sikh who recently enlisted in a branch of the Army and filed a request for a religious accommodation to wear the Sikh articles of faith while serving. Specifically, the plaintiff Kanwar Bir Singh was admitted on August 6, 2015 to the Massachusetts National Guard and filed a religious accommodation request on August 12, 2015, Compl. ¶¶ 31, 147, 151; Decl. of Kanwar Bir Singh (Apr. 4, 2016) ¶¶ 70–71, ECF No. 10; the plaintiff Harpal Singh signed a six-year contract in November 2015 to serve in the Army's Military Accessions Vital to the National Interest ("MAVNI") program and filed a religious accommodation request on November 9, 2015, which request he supplemented with more information on January 13, 2016, Compl. ¶¶ 29, 34; Decl. of Harpal Singh (Apr. 1, 2016) ¶¶ 15, 17, 19, ECF No. 11; and the plaintiff A.S.G., a minor, is currently a high school senior who enlisted on December 17, 2015 with the Virginia Army National Guard and filed a religious accommodation request on March 16, 2016, Compl. ¶ 35; Decl. of A.S.G. (Apr. 2, 2016) ¶¶ 21, 23, ECF No. 12. At the time of the filing of the pending motion for preliminary injunction in this matter, on April 4, 2016, the Army had not yet issued a decision on any of the plaintiffs' religious accommodation requests, and each plaintiff was scheduled to begin Basic Combat Training ("BCT") in May 2016. Pls.' Mem. Supp. Appl. Prelim. Inj. ("Pls.' Mem.") at 1, ECF

No. 9-1. Specifically, the plaintiff Harpal Singh was scheduled to begin BCT last week, on May 9, 2016; the plaintiff A.S.G. was scheduled to begin BCT on May 23, 2016; and the plaintiff Kanwar Bir Singh was scheduled to begin BCT on May 31, 2016. *Id.*; *see also* Compl. ¶¶ 31, 34–35.

Four days after the plaintiffs filed the pending motion, on April 8, 2016, the Assistant Secretary of the Army (ASA) for Manpower and Reserve Affairs, Debra S. Wada, granted each of their religious accommodation requests, subject to the same three limitations. *See* Defs.' Notice of Army Action ("Defs.' Notice"), Ex. 1 ("Accommodation Decisions"), ECF No. 24-1. First, "[t]he bulk of [the plaintiffs'] hair, beard, or turban may not be such that it impairs [their] ability to wear the Army Combat Helmet (ACH) or other protective equipment or impedes [their] ability to operate [their] assigned weapon, military equipment, or machinery." Accommodation Decisions ¶ 2. Relatedly, ASA Wada "may withdraw or limit the scope of [the plaintiffs'] accommodation[s] for reasons of military necessity, including if [she] cannot confirm that Army protective equipment (to include ACH and protective mask) will provide [the plaintiffs] the intended degree of protection against the hazards presented by the duties or areas to which [they] will be assigned." *Id.* ¶ 5.

Second, the plaintiffs must wear their articles of faith in a manner prescribed by the Accommodation Decisions, until such time as the Army publishes "clear uniform standards applicable to Soldiers who have received a religious accommodation," which standards "the Army intends to develop." *Id.* ¶ 3.[3]

---

[3]   The Accommodation Decisions specifically instruct the plaintiffs:
Until such standards are published, you may wear a black turban (or under turban, as appropriate) with the Army Service Uniform (ASU), the Army Physical Fitness Uniform, and the Army Combat Uniform (ACU). While wearing ACU outdoors, you may wear a turban (or under turban, as appropriate) of a matching camouflage pattern. Unless your duties, position, or assignment

8

Lastly, the plaintiffs' religious accommodations are not "permanent" or indefinite. Instead, ASA Wada "intend[s] to re-evaluate th[e] accommodation[s] at the conclusion of [the plaintiffs'] Initial Military Training and may reevaluate it earlier based upon military necessity" because the Army intends "to gather additional information and develop additional standards" for soldiers who have received religious accommodations. *Id.* ¶ 5; *see also id.* ¶ 3. As part of the information gathering process to support "the Army's interest in mission accomplishment, which requires military readiness, unit cohesion, good order, discipline, health, and safety on both the individual and unit levels, [ASA Wada] ha[s] requested that [the plaintiffs'] command[s] provide periodic assessments of the effect of [their] accommodation[s], if any, on unit cohesion and morale, good order and discipline, health and safety, and individual and unit readiness." *Id*. ¶ 4.

While the plaintiffs note that the phrase "initial military training" is "left undefined in the accommodation," Pls.' Reply Mem. Supp. Appl. Prelim. Inj. ("Pls.' Reply") at 12, ECF No. 39-1, the defendants clarify in their papers that "initial military training" consists of "Basic Combat Training and follow-on skill training such as Advanced Individual Training or Officer Candidate School," Defs.' Opp'n Pls.' Appl. Prelim. Inj. ("Defs.' Opp'n") at 16, ECF No. 35. The defendants explain that the plaintiffs Harpal Singh and A.S.G. "may complete their initial military training in the late summer or early fall of 2016," and the plaintiff Kanwar Bir Singh "will not complete his initial military training until sometime in 2018 at the earliest," at which

---

require you to wear the Army Combat Helmet (ACH) or other protective gear, you are not required to wear military headgear in addition to your turban. Your beard must be rolled and tied to a length not to exceed two inches while in garrison and a length not to exceed one inch while in the field or during physical training. Your hair may not fall over your ears or eyebrows or touch the collar of your uniform. You may display your rank on your turban, provided you remove the rank in circumstances where military headgear is not customarily worn.

*Id*.

"time[s], [ASA] Wada intends to consider any additional information gathered during the course of the training and pursuant [to] and from other Army efforts to further develop religious accommodation policy." *Id*. at 33. Notably, ASA Wada's reevaluation of the plaintiffs' religious accommodations will "not require any action by Plaintiffs; the review [will be] internal to the Army and may be informed by information and standards developed by the Army in the interim." *Id*. at 16; *see also id.* at 1 ("[D]uring this litigation (and thereafter) Plaintiffs need not resubmit a new religious accommodation request.").

The Army repeatedly assures the plaintiffs, and this Court, that "[t]here is no foreseeable reason to believe that an individualized consideration of military necessity will require modification to the Accommodations during the pendency of the litigation." *Id.* at 19; *id*. at 2 ("Plaintiffs have been and will continue to be excepted from the regulatory provisions [governing uniform and grooming standards] unless unforeseen and compelling circumstances unique to the individual soldier require otherwise. . . . Plaintiffs will be accommodated throughout their training and into the foreseeable future."); *id*. at 24 ("Plaintiffs' religious practices have been and will be accommodated for the foreseeable future."); *id*. at 38 (referring to "Plaintiffs' unfounded fears that the Army will fail to accommodate Plaintiffs during the litigation, against its word otherwise").

Despite these assurances, and even though the plaintiffs concede that an "injunction . . . would not extend significantly beyond what [the Army] has already agreed to do," Pls.' Reply at 2, the plaintiffs continue to seek: (1) "a preliminary injunction directing Defendants to grant them each a *permanent* religious accommodation," Pls.' Mot. Prelim. Inj. at 1 (emphasis added); *see also* Pls.' Reply at 16 (arguing that the Army "should have . . . grant[ed] these three Plaintiffs a secure permanent accommodation subject only to narrow augmentation for demonstrated

military necessity"); *id.* at 18, 20–21 (referring to the Army's "refus[al] to grant Plaintiffs a secure accommodation"); and (2) an order "preliminarily enjoin[ing the defendants] from enforcing against Plaintiffs any Army regulations that would prohibit them from wearing unshorn hair, a beard, and turban as required by their Sikh faith," Pls.' Proposed Order at 1, ECF No. 9-3.[4] These requests are denied.

As the Court recently explained in *Singh v. Carter*, the first of the plaintiffs' requests for relief, though designated "preliminary," instead "essentially encompasses all of the relief sought in the underlying complaint." Mem. Op. (May 6, 2016) at 4, Case No. 16-cv-399; *see* Compl. at 53 ¶ b. The D.C. Circuit has cautioned that a preliminary injunction generally "should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citing *Selchow & Righter Co. v. W. Printing & Lithographing Co.*, 112 F.2d 430 (7th Cir. 1940)); *see also Diversified Mortg. Inv'rs v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases). With respect to the plaintiffs' second request, the Court agrees with the defendants that ASA Wada has already provided the plaintiffs with preliminary relief against the enforcement of the Army's uniform and grooming regulations and, consequently, "a preliminary injunction no longer remedies their alleged harm." Defs.' Opp'n at 1; *see also id.* at 20 (emphasizing that "[t]he Army has already taken th[e] action" of

---

[4] The defendants correctly point out that these requests for relief differ, *see* Defs.' Opp'n at 15, since an injunction requiring the defendants to grant the plaintiffs permanent religious accommodations would be "'mandatory—that is, . . . its terms would alter, rather than preserve the status quo by commanding some positive act,'" and an injunction enjoining the defendants from enforcing regulations against the plaintiffs would merely preserve the *status quo*. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 32, 39 (D.D.C. 2014) (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998)); *see In re Navy Chaplaincy*, 516 F. Supp. 2d 119, 123 (D.D.C. 2007) ("When a party seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case . . . ." (collecting cases)), *aff'd on other grounds*, 534 F.3d 756 (D.C. Cir. 2008). The plaintiffs do not dispute this point. *See generally* Pls.' Reply. Accordingly, the Court addresses both the plaintiffs' request for (1) permanent religious accommodations, and (2) preliminary protection against the Army's enforcement of uniform and grooming regulations.

enjoining enforcement "'against Plaintiffs [of] any Army regulations that would prohibit them from wearing unshorn hair, a beard, and turban as required by their Sikh faith'" (quoting Pls.' Proposed Order)).

Moreover, a movant is not entitled to the "extraordinary and drastic remedy" of a preliminary injunction unless, "*by a clear showing*," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)), the movant shows "that irreparable injury is *likely* in the absence of an injunction," regardless of the likelihood of success on the merits of his claims. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis in original); *see id.* ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) ("[T]he [*Winter*] Court ruled that the movant always must show a likelihood of irreparable harm.").

In light of the April 8, 2016 Accommodation Decisions, which have enabled the plaintiffs to "begin Initial Military Training as scheduled and . . . wear a beard, turban, and unshorn hair in observance of their religious faith while in uniform, consistent with the terms of the accommodation," Defs.' Notice at 1, ECF No. 24; *see also* Defs.' Opp'n at 2 (noting that the plaintiffs are being "[c]ontinuously accommodated and [are] on track to attend previously scheduled training"), the plaintiffs cannot now make the requisite showing of irreparable harm under the D.C. Circuit's "'high standard for irreparable injury'" to warrant preliminary injunctive relief. *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). In order to be considered "irreparable," the injury "must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Id.* (emphasis in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

The plaintiffs counter that "each of them has experienced, and is still experiencing, substantial pressure to forgo serving his country in the Army if he wants to preserve" his articles of faith, Pls.' Reply at 1; *id.* at 2 ("Plaintiffs have experienced, and continue to experience[] substantial pressure to exit the military to preserve their articles of faith."), emphasizing the past delay, uncertainty, expense and discriminatory treatment they have experienced while attempting to join the military and receive religious accommodations, *see id.* at 6–9, 11.[5] Generally, "past injury alone is not sufficient to merit the award of relief against future conduct," and "[a] great deal more is required," particularly in this circumstance, where "the relief sought [may] . . . enjoin the conduct of vital governmental functions which require the exercise of discretion in a myriad of unpredictable circumstances." *Halkin v. Helms*, 690 F.2d 977, 1005 (D.C. Cir. 1982); *see also Winter*, 555 U.S. at 24 (explaining that where a "case involves complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force, which are essentially professional military judgments," those judgments are afforded "great deference" (quotations and citations omitted)).[6]

---

[5] The parties dispute the factual allegations of discrimination, and the Court makes no finding with respect to the validity of the plaintiffs' allegations at this stage.

[6] The plaintiffs dispute the defendants' contention that an injunction would "improperly invade the protected sphere of military decision-making" because (1) "the injunction would be limited in time and . . . would not extend significantly beyond what [the Army] has already agreed to do," (2) "[a] preliminary injunction would allow the parties and this Court to stay the litigation pending implementation of the anticipated new regulations," (3) "there is a meaningful risk of a change in leadership and policy views within the military as a result of the upcoming presidential election," and (4) "an injunction sends a clear message that the Army cannot continue to subject Sikh

Still, in light of their detailed allegations of past discrimination and "the Army's litigation-induced" grant of religious accommodations, the plaintiffs urge the Court to "assume the Army could withdraw the accommodations at any time," Pls.' Reply at 2, and insist that "it is now the *Army's* burden to show why injunctive relief should *not* issue," *id.* at 1 (emphasis in original); *see also id.* at 9 ("Where, as here, a case presents 'abundant evidence of consistent past discrimination, injunctive relief is *mandatory* absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law.'" (emphasis in original) (quoting *NAACP v. City of Evergreen*, 693 F.2d 1367, 1370 (11th Cir. 1982))); *id.* at 12 ("[T]he Army cannot meet, and has not even attempted to meet, its heavy burden of showing there is 'no reasonable expectation' that Plaintiffs could be faced with the same delays, uncertainty, and expense—or even outright withdrawal—when the Army next reevaluates their accommodations.").

Shifting the burden is inconsistent with this Court's binding precedent, and the plaintiffs' "focus is misleading . . . , as it seeks to confuse the doctrine of mootness in the context of injunction proceedings, which goes to the justiciability of the underlying claim, with the substantive principles governing the grant of equitable relief." *Halkin*, 690 F.2d at 1006. When there has been voluntary cessation of wrongful conduct, it is, indeed, the wrongdoer's "heavy burden" to "demonstrate that 'there is no reasonable expectation that the wrong will be

---

soldiers to extreme delay and uncertainly, which may potentially avoid the need for a class action as additional Sikhs come forth to enlist in the Army." Pls.' Reply at 2–3; *see also id.* at 12 (expressing concern about the upcoming presidential election). None of these reasons is persuasive. The Army has agreed to accommodate the plaintiffs through their initial military training and the parties may jointly agree to request a stay of this litigation notwithstanding a denial of the requested preliminary injunction. The risk of a change in leadership as a result of the November 2016 presidential election, which could potentially harm the plaintiffs, amounts to pure speculation that cannot compel the grant of injunctive relief, and the threat of class action litigation is similarly speculative. Finally, in light of the religious accommodations already granted, a permanent injunction is not necessary, as the plaintiffs urge, to ensure that the Army properly undertakes the rulemaking process. Pls.' Reply at 25.

repeated'" in order to show that a case has become *moot*, and "[a]long with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (citation omitted). To obtain injunctive relief, however, "the *moving party must* satisfy the court that relief is needed" to prevent future wrongful conduct. *Id.* (emphasis added); *see also id.* ("The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."); *Halkin*, 690 F.2d at 1006 ("[W]hile the burden is . . . upon the defendant to show that a claim for injunctive relief has become moot, it lies with the plaintiff to show entitlement to remedy."). A district court has "broad discretionary power to withhold equitable relief as it reasonably sees fit," and does not abuse its discretion by denying injunctive relief where voluntary cessation of wrongful conduct is, nonetheless, "insufficient to moot the case." *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1214 (D.C. Cir. 2004) (discussing *W. T. Grant Co.*, 345 U.S. at 635–36).

Here, the plaintiffs have not shown, "as [they] must to obtain an injunction, a 'cognizable danger of recurrent violation,'" *Kansas v. Nebraska*, 135 S. Ct. 1042, 1059 (2015) (quoting *W. T. Grant Co.*, 345 U.S. at 633), or any current "threat of imminent, specific and irreparable harm," *Halkin*, 690 F.2d at 1005. The plaintiffs allege, in general terms, a current (1) loss of constitutional freedoms, and (2) ongoing discriminatory treatment. Pls.' Reply at 24; *see also id.* (alleging that defendants "continue to treat Plaintiffs differently from other soldiers and other Sikhs").[7] They fail to specify what constitutional freedoms they are *currently* losing or what

---

[7] The plaintiffs also point to "the profound chilling effect on religious minorities." *Id.* This alleged harm is unavailing, and the plaintiffs' related Notice of Supplemental Authority, ECF No. 44, is "of limited utility," for the same reasons discussed in the Court's recent Memorandum Opinion denying the plaintiff's motion for preliminary injunctive relief in *Singh v. Carter*. Mem. Op. (May 6, 2016) at 13 n.4.

15

discrimination they are *currently* facing, however. *See* Defs.' Opp'n at 18 ("Plaintiffs fail to allege with any specificity what 'discrimination' they are now facing that they seek to have enjoined."). Significantly, the plaintiffs Harpal Singh and A.S.G. make no allegations whatsoever of any continuing harm they are experiencing, *see* Pls.' Reply at 8, and the plaintiff Kanwar Bir Singh alleges merely that the fact that the Army has, "for reasons unknown to him, . . . pushed his start date to March 2017" for Officer Candidate School, has "*potentially* jeopardiz[ed] his student-loan repayment contract," *id.* at 6 (emphasis added). This potential harm, as well as any "uncertainty and delay" that the plaintiffs face, *id*. at 7; *see also id.* at 22 ("Even now, the process is creating uncertainty and causing harm to Plaintiffs."), is simply insufficient to warrant preliminary injunctive relief. *See Halkin*, 690 F.2d at 1006 ("'[T]he mere possibility of future misconduct is simply not enough.'" (quoting *Reporters' Committee for Freedom of the Press v. Am. Telephone & Telegraph*, 593 F.2d 1030, 1069 (D.C. Cir. 1978))); *id*. at 1005 ("'[J]udicial intervention to prevent potential injury from prospective government misconduct is only justified when such misconduct is imminent, not merely hypothetical.'" (quoting *Exxon Corp. v. FTC*, 589 F.2d 582, 589 n.14 (D.C. Cir. 1978))).

    In sum, the Court agrees with the defendants that the plaintiffs have not shown "any immediate, irreparable harm, and, as such, a preliminary injunction is clearly unwarranted." Defs.' Opp'n at 2. The plaintiffs may litigate past harms and the limitations of, or conditions placed on, their religious accommodations in the normal course of litigation, and are free to bring a motion for interim injunctive relief if they do, in fact, come to face immediate, irreparable harm while this case is still pending.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Objection to Plaintiffs' Notice of Related Case, ECF No. 37, is overruled and the plaintiffs' Application for Preliminary Injunction, ECF No. 9, Motion to Consolidate, ECF No. 27, and Expedited Motion for Status Conference, ECF No. 43, are denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 18, 2016

_____
BERYL A. HOWELL
Chief Judge